532 A.2d 352

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kenneth SAXTON, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 10, 1987.

Decided Oct. 15, 1987.

Albert J. Cepparulo, New Hope, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Harriett Brumberg, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

NIX, Chief Justice.

The appellant, Kenneth Saxton, urges us to reverse the order of the Superior Court, 348 Pa.Super. 634, 501 A.2d 293, affirming the judgments of sentence entered against him for first degree murder and possessing an instrument of crime, and to grant him a new trial. We granted review limited to a single issue: the effectiveness of trial counsel's assistance regarding the admission at trial of evidence of the appellant's prior criminal conduct.

In the evening of August 6, 1980, McKinley Avery and a companion were working on their cars in the parking lot of a Philadelphia public housing project, where Avery resided. With the onset of darkness, the men resorted to flashlights to augment the illumination in the parking lot. At approximately 10:00 p.m., a man approached Avery, put a gun to his neck, and demanded $45. Mr. Avery pleaded with his companion to give the gunman $15. That sum was unsatisfactory to the robber, but he would not let Avery's compan-

ion go to his apartment for more money. In the meanwhile, the disturbance had been heard by Mr. Avery's wife, Theodorsha Johnson. From the window of their kitchen, about fifteen feet from the men, she inquired as to what was transpiring. Her sister, Sandra Terrell, also viewed the events from the same window. The armed man told Ms. Johnson that if she moved or spoke he would hurt her. The gunman then shot Mr. Avery in the neck, killing him.

Two days after the murder of Avery, a police detective showed Ms. Johnson a dozen photographs, from which she identified Kenneth Saxton as the man who shot her husband. Based solely on that identification, Saxton was arrested and charged with murder, involuntary manslaughter and possession of an instrument of crime. The case was subsequently tried in the Court of Common Pleas of Philadelphia County, before a judge sitting without a jury. Saxton was adjudged guilty of murder in the first degree and possessing an instrument of crime. Following the denial of post-trial motions, he was sentenced to life imprisonment for the murder and to a concurrent prison term of two-to-five years for the additional offense.

Newly assigned counsel filed an appeal to the Superior Court, asserting that trial counsel's assistance was ineffective in a constitutional sense. The Superior Court, by an order dated June 29, 1984, remanded the matter to the trial court to supplement the record so that the assertions of ineffectiveness could be addressed. Upon complying with the mandate, the trial court determined that the claims of ineffective assistance were meritless. When the Superior Court reviewed the case, it agreed with the appellant's contention that he had been ineffectively represented in certain instances during the trial. Specifically, the Superior Court concluded that trial counsel had failed to provide effective assistance at two points: First, after the completion of the defense's case-in-chief, defense counsel entered into a stipulation that the appellant had a prior conviction for violating the Uniform Firearms Act ("UFA"). Second, counsel failed to object when a police witness, during the

Commonwealth's case in rebuttal, referred to Saxton's "fingerprint number" and testified to the fact that the police had a previous photograph of the appellant in their files, thus allowing the prosecution to indicate that the appellant had a prior police record. Notwithstanding the conclusion that those actions constituted ineffective assistance, the Superior Court affirmed the judgments of sentence, theorizing that the instances of ineffective assistance by trial counsel were harmless error. As noted, we allowed further review by this Court for the narrow purpose mentioned.

■ In view of our recent clarification in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), a finding of ineffective assistance of counsel can be made only after there has been a determination that the client has, in fact, been prejudiced by the alleged error or omission of counsel. Therefore, it is obvious that the Superior Court's analysis was internally inconsistent. *A fortiori*, a finding of ineffective assistance precludes a further determination that the deficiency was harmless.

It is beyond question that an accused in this Commonwealth is entitled to competent counsel at trial. Pa. Const. art. 1, § 9; *Commonwealth v. Bunch*, 466 Pa. 22, 351 A.2d 284 (1976); *Commonwealth v. Wideman*, 460 Pa. 699, 334 A.2d 594 (1975); *Commonwealth v. Kennedy*, 451 Pa. 483, 305 A.2d 890 (1973); *Commonwealth v. Sliva*, 415 Pa. 537, 204 A.2d 455 (1964); *Commonwealth ex rel. Remeriez v. Maroney*, 415 Pa. 534, 204 A.2d 450 (1964); *Commonwealth ex rel. Carey v. Keeper of Montgomery County Prison*, 370 Pa. 604, 88 A.2d 904, *cert. denied*, 344 U.S. 845, 73 S.Ct. 61, 97 L.Ed. 657 (1952). In this connection, it is recognized that counsel must fulfill myriad duties on behalf of his accused client to assure him of a fair trial. American Bar Association, Standards for Criminal Justice ("ABA Standards"), Standard 4-1.1, Commentary, "The Role of Defense Counsel" (1982). For example, counsel must assure procedural fairness, ABA Standards, Standard 4-3.-6(a). He must keep the accused fully informed of all options throughout the proceedings, ABA Standards, Stan-

dards 4–3.1(a), 4–3.1(b), 4–3.8, 4–6.2(a). An additional duty of counsel is to assure that his client's cause is presented in the most favorable light. ABA Standards, Standard 4–1.1, Commentary, *supra.*

It would be shocking to the sense of fairness to allow one who has requested the assistance of counsel to receive ineffective representation merely because his indigency prevented him from obtaining competent counsel through his own means. ABA Standards, Chapter 5, "Providing Defense Services; *see Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Quite frequently, it is that very state of poverty which puts a person in a situation requiring the assistance of competent counsel. Recognizing as we have that the assistance of competent counsel is a critical element in the panoply of rights encompassed by the concept of fair trial, we have also held that a "harmless error" analysis is improper in determining a claim of ineffective assistance of counsel. *Commonwealth v. Badger,* 482 Pa. 240, 393 A.2d 642 (1978).

Nevertheless, for reasons which will follow, it is our conclusion that the Superior Court's threshold error in the instant case was its finding of ineffective assistance.

In this Commonwealth we have long used, to gauge the ineffectiveness of counsel's stewardship, the test set forth in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). *Commonwealth v. Pierce, supra; Commonwealth v. Bolden,* 512 Pa. 468, 517 A.2d 935 (1986) (Nix, C.J., and McDermott, J., dissenting); *Commonwealth v. Bricker,* 506 Pa. 571, 487 A.2d 346 (1985); *Commonwealth v. Dunbar,* 503 Pa. 590, 470 A.2d 74 (1983); *Commonwealth v. Parker,* 503 Pa. 336, 469 A.2d 582 (1983); *Commonwealth v. Jones,* 499 Pa. 522, 454 A.2d 8 (1982); *Commonwealth v. Perkins,* 496 Pa. 482, 437 A.2d 1143 (1981); *Commonwealth v. Schroth,* 495 Pa. 561, 435 A.2d

148 (1981); *Commonwealth v. Johnson,* 490 Pa. 312, 416 A.2d 485 (1980); *Commonwealth v. Shore,* 487 Pa. 534, 410 A.2d 740 (1980); *Commonwealth v. Turner,* 469 Pa. 319, 365 A.2d 847 (1976); *Commonwealth v. Smallwood,* 465 Pa. 392, 350 A.2d 822 (1976); *Commonwealth v. Turner,* 454 Pa. 520, 314 A.2d 496 (1974); *Commonwealth v. Frazier,* 455 Pa. 162, 314 A.2d 16 (1974); *Commonwealth v. Pride,* 450 Pa. 557, 301 A.2d 582 (1973); *Commonwealth v. Norman,* 447 Pa. 515, 291 A.2d 112 (1972); *Commonwealth v. Alvarado,* 442 Pa. 516, 276 A.2d 526 (1971); *Commonwealth v. Couch,* 442 Pa. 402, 275 A.2d 112 (1971); *Commonwealth v. Berry,* 440 Pa. 154, 269 A.2d 921 (1970); *Commonwealth v. Taylor,* 439 Pa. 321, 266 A.2d 676 (1970); *Commonwealth v. Studenroth,* 430 Pa. 425, 243 A.2d 352 (1968); *Commonwealth v. Wilson,* 429 Pa. 458, 240 A.2d 498 (1968); *Commonwealth ex rel. Johnson v. Russell,* 428 Pa. 440, 239 A.2d 399 (1968); *Commonwealth v. Grays,* 428 Pa. 109, 237 A.2d 198 (1968).

In *Commonwealth ex rel. Washington v. Maroney, supra,* the process of measuring the effectiveness of counsel was described by this Court as follows:

> Our task ... encompasses both an independent review of the record,.... and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives.... We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. (emphasis in original). The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. (emphasis in original) Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had *any* reasonable basis. (emphasis added). 427 Pa. at 604–605, 235 A.2d at 352–53.

The *Washington* Court also made clear that, for relief to be granted, the accused must demonstrate that counsel's ineffectiveness worked to his prejudice.

"Since our test requires that we examine the approach employed by trial counsel in light of the available alternatives, a finding of ineffectiveness could never be made unless we concluded that the alternatives not chosen offered a potential for success *substantially greater than the tactics actually utilized.*" (emphasis added) *Id.*, 427 Pa. at 605 n. 8, 235 A.2d at 353 n. 8.

Thus, the *Washington* Court expressly rejected the view that prejudice was unnecessary in such an analysis. Properly applied the *Washington* test would only grant relief where in fact the accused was prejudiced by the dereliction of counsel. *Id.*

■ In *Washington*, counsel was deemed ineffective because he employed a trial strategy that was found wanting under the "reasonable basis" test. That is, this Court concluded that the other alternatives offered a "substantially greater likelihood of success" than the one chosen by counsel. Clearly, in the context of the case, the impact of such an error prejudiced the right of that defendant to a fair trial. Properly applied the *Washington* test requires an examination of the *entire record* to determine whether the attorney's ineptness deprived the client of a fair trial. An attempt to assess counsel's performance by applying the "reasonable basis" test to isolated judgments made in the heat of trial distorts the analysis and produces results that are unwarranted. The Court in *Washington*, as is clear from its opinion, never intended to remove prejudice as an element necessary to a finding of ineffectiveness. To properly determine whether a client has been prejudiced by the quality of counsel's representation, it is necessary to focus on the overall trial strategy and to view the lawyer's performance *in toto.*

■ It must also be emphasized that the *Washington* standard does not mandate the highest quality of advocacy available, but does insist that there be at least a certain

minimum level of competency. 427 Pa. at 604, 235 A.2d at 352. When that minimum level has not been provided there results a prejudice which cannot be ignored, regardless of how impressive the prosecution's evidence might appear to a reviewing court reading the cold record. Indeed, it may well be that counsel's ineffectiveness substantially contributed to the apparent invincibility of the prosecution's case. As noted by this Court in *Commonwealth v. Edwards*, 394 Pa. 335, 338, 147 A.2d 313, 315 (1959):

> Even, if in a hypothetical case, the evidence of guilt piles as high as Mt. Everest on Matterhorn, even if the District Attorney conscientiously believes the defendant to be as guilty as Cain, and no matter with what certainty the Judge views the culpability of the accused at the bar, the defendant is still entitled to all the safeguards of a fair trial as announced in the Constitution and the law of the land.

We therefore reject the Commonwealth's exhortation that we adopt a harmless error analysis in assessing claims of ineffective assistance of counsel. Such claims are to be resolved by a proper application of the "reasonable basis" test set forth by this Court in *Washington*. Under that test, as we have already emphasized, a finding of ineffective assistance cannot be made unless the accused demonstrates that he was prejudiced by the claimed dereliction of counsel. The key to the proper application of the *Washington* standard is that it focuses on the overall trial strategy of counsel, not merely an isolated segment of the trial. If upon review of counsel's overall strategy or performance it appears that the accused was prejudiced in an identifiable way by the quality of his representation, then a new trial is required, without regard to the apparent strength of the prosecution's case.

As noted, this appeal concerns the Superior Court's conclusion that defense counsel was ineffective in two respects: (1) stipulating to the appellant's prior conviction for violating the Uniform Firearms Act; and (2) failing to object to the testimonial reference, by a police detective, to the fact

that the police had the appellant's photograph and finger-prints when they investigated the killing.

■ Regarding the stipulation that the appellant had a prior UFA conviction, we must take note that the appellant, while testifying on direct examination, had stated that he had "never owned a gun." (N.T. 1/8/81, 3.125). On cross-examination the following responses were elicited from the accused:

Q: When Mr. Every asked you on direct examination whether or not you had owned a .22, was your answer that you never owned a .22 in your life or you've never owned a gun in your life?

A: I don't have no gun, I don't own a gun.

Q: That's not my question.

A: I don't own a gun.

Q: Have you ever?

A: No, except for United States issue, and I gave that back to them.

(N.T. 1/8/81, 3.196).

Thereafter, defense counsel and the prosecution entered into a stipulation that the appellant had been convicted of a UFA violation in 1971. (N.T. 1/9/81, 4.81).

At the post-trial hearing, defense counsel explained his rationale for the stipulation:

Well, because he took the stand in his own defense and testified that he never owned or had a gun, and therefore had I not stipulated to that, the District Attorney could have introduced it on cross-examination, and I think it would have been devastating to have it come in that way rather than—

... I thought it would be better to come in by stipulation before the fact-finder than come in on cross-examination where it would harm the defendant more ...

It was going to come in anyway. I'm a pretty good trial lawyer and I know that if it comes in another way—I rather it come in this way, by agreement, rather than by

making him look bad. That's why I did, I didn't want him to look bad ...

He would have still come through as a liar, which I didn't want him to come through as a liar. I wanted him to come through well, which he did, so I stipulated. It's always been my practice to stipulate to something that's going to come in anyway ...

... but it was rather damaging, I thought, to have a record introduced showing he had been convicted of this crime when he in fact said he never owned a gun and never had a gun.

(N.T. 6/10/81, 2.15, 2.43–2.45).

Because the appellant had "opened the door" by denying that he ever "had" a gun, defense counsel, cognizant that the appellant's testimony could be impeached on cross-examination or rebutted, attempted to mitigate any damage that might result from the appellant's statement by entering into the stipulation. We conclude that counsel's decision to do so was a reasonably based strategic choice.

▮▮ A review of the record also reveals that it was appropriate for defense counsel not to object to the detective's reference to the police department's possession of the appellant's photograph and fingerprints. The defense offered testimony seeking to establish that the accused had continued to reside at his home for six weeks after the murder and that the police had made no effort to take him into custody during that period. The inference which the defense sought to promote was that, at least at the outset of the investigation, the appellant was not a suspect. As noted by the trial court in its opinion, the detective's testimonial reference was offered to show that the police did in fact make a diligent effort to locate the defendant during the period in question, and that they did so by means which included using the resources of the National Crime Information Center and distributing a "wanted circular" for the defendant's arrest. The informational source from which they proceeded in their search was the photograph and fingerprints alluded to by the detective. Such testimony on

behalf of the Commonwealth clearly did not violate the prohibition against referring to prior, unrelated offenses of an accused. Evidence of prior crimes, though generally inadmissible, may be admitted if relevant to prove something other than a defendant's propensity for committing crimes. *E.g., Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176 (1985); *Commonwealth v. Russell*, 459 Pa. 1, 326 A.2d 303 (1974). One exception to the general prohibition is that the Commonwealth may introduce evidence tending to show prior offenses if the purpose is to rebut statements which create inferences favorable to the accused. *Commonwealth v. Roots*, 452 Pa. 535, 306 A.2d 873 (1973). Therefore, under the "reasonable basis" test as outlined herein, it was appropriate for defense counsel to refrain from objecting to the detective's reference. Counsel is not ineffective for declining to make a meritless objection. *Commonwealth v. Albrecht*, 510 Pa. 603, 511 A.2d 764 (1986); *Commonwealth v. McNeil*, 506 Pa. 607, 487 A.2d 802 (1985); *Commonwealth v. Anderson*, 501 Pa. 275, 461 A.2d 208 (1983); *Commonwealth v. Gray*, 473 Pa. 424, 374 A.2d 1285 (1977).

In the trial of the instant case, defense counsel adopted the only strategy reasonably available. Counsel sought to put the Commonwealth to its burden of proving that the appellant was in fact the person who murdered McKinley Avery. To that end, counsel attacked and sought to discredit the prosecution's evidence relating to the identity of the appellant as the killer. Counsel also put his client on the witness stand to deny that he was the murderer. It is clear to us that counsel's strategy was designed to serve the best interests of the accused. Furthermore, an assessment of counsel's efforts in pursuing the strategy does not support a finding of inadequacy, incompetence or prejudice that would justify a determination of ineffective assistance.

Accordingly, we affirm the judgments of sentence.

PAPADAKOS, J., files a concurring opinion.

LARSEN, McDERMOTT and HUTCHINSON, JJ., concur in the result.

PAPADAKOS, Justice.

I agree with the results reached by the majority in this appeal. However, I believe that the facts of this case do not require the employment of a prejudice analysis as set forth in our recent decision of *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). Defense counsel's strategy was reasonable in that it was calculated to serve his client's best interests. We have so concluded in the majority opinion. There is no need to go any further in the inquiry.

Lastly, I want to point out that the term "harmless error" has been applied traditionally to prosecutorial and court errors only. It should not be used in the context of cases dealing with ineffective assistance of counsel.