J-S40025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES S. FLUELLEN | |
| Appellant | No. 2819 EDA 2015 |

Appeal from the Judgment of Sentence August 20, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006373-2014

BEFORE:  BOWES, J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:                    **FILED JUNE 06, 2016**

Appellant, James S. Fluellen, appeals from the August 20, 2015 aggregate judgment of sentence of 12 to 24 years' incarceration, plus 5 years' probation, imposed after a jury convicted him of robbery, possessing an instrument of a crime (PIC), and terroristic threats.[1]  After careful review, we vacate and remand for re-sentencing.

The trial court detailed the relevant facts of record as follows.

> On Thursday, September 18, 2014, Brittany Draughon, the assistant manager of the Dollar Tree store in Sharon Hill, and Diane Peters, a cashier, were working the closing shift.  At about 8:30 p.m., Ms. Draughon was prepared to close the store for the evening.  She collected trash near the register and took it to a crowded stock room that was located at

---

[1] 18 Pa.C.S.A. §§ 3701, 907, and 2706, respectively.

the rear of the store. Ms. Draughon was occupied with her task among the boxes and shopping carts in the storeroom. When she looked up from her work she saw [Appellant] slowly emerge from an adjacent bathroom with a gun in his hand. His head was hooded and a black bandana covered his face. Ms. Draughon froze. [Appellant] asked her whether there was a man in the store. She told him there was not and he asked whether there was anyone else in the store and also asked, "where's the money?" Ms. Draughon told him that it was in a safe in the front of the store and [Appellant] walked her through the store to the front where the safe was located. As Ms. Draughon walked to the front of the store with [Appellant] close behind her, she passed her co-worker Ms. Peters and she whispered to her in an effort to get her attention.

When they reached the safe, [Appellant] put the gun to Ms. Draughon's back and said, "open the safe or I'll blow your head off." At this point Ms. Peters approached and Ms. Draughon testified that, "she looked at me, because nobody is supposed to be at the safe unless it's just a manager. She walked up. I pretty much gave her the look like, you know, something's going on, like the look, right?" [Appellant] looked at Ms. Peters and said, "hey, how you doing." Ms. Draughon looked directly at [Appellant] when he engaged in the conversation with Ms. Peters and "tried to ID his face." He was standing less than an arm's distance away from her and at this point his hood was still up but his face was no longer covered. Ms. Draughon testified that she looked at [Appellant's] "full face" purposefully so that she would be able to identify him.

After [Appellant] took the money, in accord with Dollar Tree procedure, Ms. Draughon locked the door and called "911." Meanwhile, unbeknownst to Ms. Draughon, Ms. Peters had also called 911 and reported a robbery. Police officers arrived before Ms. Draughon completed her 911 call and she gave them a description of the robber.

About two weeks later, Detective Richard Herron of the Sharon Hill Police Department went to the Dollar Tree store with a photo array. In less than a minute, Ms. Draughon picked a photo of [Appellant] from the array and identified him as the robber.

Diane Peters, a Dollar Tree cashier, testified that she was working at the Sharon Hill Dollar Tree store when it was robbed. After 8:00 p.m. she saw a man enter the store. He was wearing a hoodie with the hood up over his head and he was carrying a bag. Ms. Peters thought this was strange because the weather was warm. Because he was carrying a bag, she suspected him of shoplifting. She followed him throughout the store, ending up by the safe where he stood with Ms. Draughon. Ms. Peters testified that she knew "something was wrong" because store protocol is that no one, except an employee or manager is allowed near the safe. Ms. Peters testified that she and Ms. Draughon looked at each other and that "the look in [Ms. Draughon's] eyes was like fear." After the man said "hi" to her, Ms. Peters walked down the aisle, pulled out her cell phone and called 911.

On cross-examination, trial counsel reviewed Ms. Peter's direct testimony. Drawing his cross-examination to an end, trial counsel asked Ms. Peters whether she was ever asked to make an identification. She replied, "No." Next, he asked: "And I think at one point you might even have told either the detective or the DA you don't think you could identify anybody?" Ms. Peters replied: I probably did because it was a quick glance."

On re-direct, the prosecutor noted that Ms. Peters appeared to have been cut short in her reply:

Q: Was there any explanation you wanted to make in response to that question by [Appellant's counsel]?

> A: I said if I ever – I did see his face. And if I [saw] it again, and that is him sitting over there. I mean, at the time I wasn't like – I looked at his face and stuff, but I just wasn't asked to identify him because like I caught the end of it. [Ms. Draughon] had more contact than I did. But that is him.

Trial counsel did not object to this testimony. Instead, on re-cross, he continued and elicited further testimony which ended with the witness's statement that she was "100 percent positive" that [Appellant] was the man who robbed the Dollar Tree[.]

…

Only after this exchange did trial counsel move for a mistrial. In support, he argued that he had withdrawn a pre-trial motion for Ms. Peters to appear for a line-up when the Commonwealth represented that Ms. Peters would not be called to identify [Appellant] at trial. Trial counsel claimed further, that Ms. Peters identified [Appellant] "at the Commonwealth's prompting." The prosecutor responded that she did not ask for identification but asked the witness to clarify her response to trial counsel's question. She stated further that she did not know that Ms. Peters was going to identify [Appellant], that it "seemed [Ms. Peters] seemed she wanted to say something additional before he finished his questions." The motion for a mistrial was denied.

…

[In addition,] Detective Herron testified that he responded to the reported armed robbery at the Dollar Tree on September [1]8, 2014. He arrived sometime after 8:00 p.m. Upon his arrival, Detective Herron met both Ms. Draughon and Ms. Peters and he took a written statement from Ms. Draughon, including a description of the robber. The store was not outfitted with security video cameras

and no fingerprints were found on the safe. Ms. Draughon's description of the robber was transmitted to local police departments and through a press release the description appeared in the <u>Delaware County Daily Times</u>. On September 30, 2014 [Detective Herron] received a tip that [Appellant] was possibly the man he was searching for. Detective Herron secured a picture of [Appellant] via a computer search and used that photo to prepare a photo array. [Ms. Draughon identified Appellant as the robber from the photo array.]

Trial Court Opinion, 10/29/15, at 2-6, 10 (internal citations and footnote omitted).

After the two-day trial, the jury rendered its guilty verdict on June 3, 2015. The trial court originally sentenced Appellant on July 16, 2015. Appellant filed a motion for reconsideration of sentence on July 22, 2015, and asserted that his sentence was "excessive" and "exceeded the statutory maximum as allowed by law." The trial court vacated the July 16, 2015 judgment of sentence, and on August 20, 2015, entered an amended sentence of 12 to 24 years' incarceration for the robbery and PIC convictions, with 5 years of consecutive probation for the terroristic threats conviction. Appellant filed a timely notice of appeal on September 17, 2015.[2]

On appeal, Appellant presents three issues for our review.

---

[2] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

I.    Whether the [trial] court erred in denying defense counsel's motion for mistrial based on the prejudicial event that occurred when Commonwealth witness, Detective Richard Herron testified about a tip he received that [Appellant] was involved in the robbery at issue[?]

II.   Whether the [trial] court erred in denying defense counsel's motion for a mistrial based on the prejudicial event that occurred when Commonwealth witness, Diane Peters identified [Appellant] as the individual who carried out the robbery at issue, after the defense was expressly assured by the Commonwealth on multiple occasions that she would not be making an in-court identification of [Appellant] [?]

III.  The sentence of five years consecutive probation imposed for the terroristic threats conviction is illegal since that charge should have merged with the robbery conviction for purposes of sentencing.

Appellant's Brief at 7-8.

In his first and second issues, Appellant claims that the trial court erred by denying his requests for a mistrial. Our standard of review is as follows.

The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary

> instructions are adequate to overcome any possible prejudice.

*Commonwealth v. Johnson*, 107 A.3d 52, 77 (Pa. 2014) (citation omitted). Furthermore, a mistrial is an "extreme remedy" that is only required where the challenged event deprived the accused of a fair and impartial trial. *Commonwealth v. Laird*, 988 A.2d 618, 638 (Pa. 2010) (citation omitted).

Consistent with the foregoing, we find no abuse of discretion by the trial court in denying Appellant's requests for the remedy of a mistrial with respect to the testimony of Detective Herron and the testimony of Ms. Peters. In his first issue, Appellant asserts that Detective Herron's testimony concerning his receipt of an anonymous tip prejudiced Appellant and deprived him of a fair and impartial trial. Appellant's Brief at 13. Specifically, Appellant claims his "theory of defense in this case was predicated entirely on the notion of mistaken identity," such that "the disclosure of the content of the anonymous tip by Detective Herron was plainly an extra-judicial statement which had an undeniable effect on the jury. They were essentially told by the investigator that [Appellant] was definitely the person who forced the [Ms. Draughon] at gun point to open the safe and give up the money." *Id.* at 18.

In response, the Commonwealth counters that Detective Herron's testimony that he received an anonymous tip that Appellant was the robber constituted permissible hearsay because it was not offered for the truth of

the matter asserted; rather, it was offered so Detective Herron could explain "his investigation and subsequent placement of [Appellant's] photograph into the photo array." Commonwealth's Brief at 9. Appellant registered his objection at trial. N.T., 6/2/15, at 95. The Commonwealth notes that the trial court provided a cautionary instruction "informing the jury the evidence was only admitted to explain the officer's course of conduct. Even if the court abused its discretion in admitting the evidence, the error was harmless in light of the overwhelming evidence." Commonwealth's Brief at 9.

Upon review, we agree with the Commonwealth, and incorporate the trial court's rationale as follows.

> To the extent [Appellant] claims this testimony was inadmissible hearsay it may be summarily dismissed. The Rule Against Hearsay precludes the admission of out-of-court statements that are offered to prove the truth of the matter asserted. **See** Pa.R.E. 801 & 802. Detective Herron's statement was not offered to prove the veracity or accuracy of the tip he received. In fact, aside from [Appellant's] name, details concerning the tip were not included in his testimony. The testimony was offered only to explain Detective Herron's course of conduct. Specifically, it explained why [Appellant's] picture was included in a photo array. "It is well established that certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which police acted." **Commonwealth v. Chmiel**, 889 A.2d 501, 532 (Pa. 2005). **See also Commonwealth v. Weiss**, 81 A.3d 767, 806 (Pa. 2013) (Trooper's testimony that he had received an anonymous telephone call informing him that appellant was with the victim before her murder

offered to explain circumstance that prompted his interview with appellant was not hearsay).

Trial Court Opinion, 10/29/15, at 11. As we find the trial court's reasoning persuasive, we discern no abuse of discretion in its denial of a mistrial relative to Trooper Herron's testimony.

Similarly, we discern no abuse of discretion with regard to the identification testimony of Ms. Peters. Appellant asserts that the "back story to this prejudicial event begins with multiple pre-trial requests to have Miss Peters submit to a lineup procedure in order to determine her ability to positively identify [Appellant] prior to seeing him in the courtroom setting." Appellant's Brief at 20. Appellant states that he "was assured" that Ms. Peters would not be testifying as to the identity of Appellant as the individual who held up the Dollar Tree Store. *Id.* Appellant contends that he "was blindsided when the witness affirmatively identified him to the jury," and although "the Commonwealth does not appear to be complicit in the shocking turn of events, the resulting unfairness nonetheless tangibly handicapped the only theory of defense in play, i.e., that of mistaken identity." *Id.* at 29.

Conversely, the Commonwealth responds that, at trial, "the defense was trying to take advantage of the Commonwealth's belief that Ms. Peters could not identify [Appellant]. The defense was trying to advance the inference that Ms. Peters could not identify [Appellant]. [Appellant's] overreach is not the fault of the Commonwealth. The prosecutor only asked

the witness to finish an answer to defense counsel's question." Commonwealth's Brief at 23.

Again, we find the trial court's comprehensive analysis of Appellant's claim to be dispositive. The trial court explained as follows.

> [Ms. Peters'] identification [of Appellant] was not solicited by the prosecutor and when the statement was made, the prosecutor immediately ended her line of questioning. Trial counsel did not object and he did not move for a mistrial. He chose instead, in an effort to undermine Ms. Peters' unsolicited identification, to launch a line of questioning that ended with testimony that resulted from his own leading question: "Q: And you're sure of that, right? As you look, you're positive, 100 percent – A: I'm positive, yes, positive. Q: 100 percent, right? A: 100 percent positive. Q: Okay."
>
> Under these circumstances, it must be concluded the motion for a mistrial was untimely. The Commonwealth did not elicit an identification when Ms. Peters testified on direct. Rather, the unexpected testimony came only after, on cross examination, trial counsel attempted to impugn Ms. Peters' ability to make an identification at all, an issue that had little if any relevance given the fact that her testimony was not offered for that purpose. Further, the motion for a mistrial was not made when the witness first identified [Appellant] on re-direct, ***but only after trial counsel elicited far more problematic testimony***. Had trial counsel made an appropriate and timely objection and/or motion, a simple curative instruction would have eliminated any possible prejudice given the facts of this case. ***See generally Commonwealth v. Boring***, [684 A.2d 561 (Pa. Super. 1996)]. The objectionable identification was brief, unsolicited, unexpected and was not of "such a nature that its unavoidable effect is to deprive the defendant of a fair and impartial trial by preventing the jury from

- 10 -

weighing and rendering a true verdict," and accordingly the motion for a mistrial was properly denied.

Additionally, the prosecutor's clarifying question was allowable under the fair response doctrine. [Appellant] attempted to leave the jury with the impression that Ms. Peters was unable to make identification because her observations during the robbery were brief and because her interaction with [Appellant] was limited. … However, when given the opportunity, she explained that she was never asked previously to make identification but that in court she recognized [Appellant] as the man who spoke to her during the robbery. The Commonwealth's request for clarification, under these circumstances, where [Appellant] has created an inference to himself that is favorable to him is permissible. *See Commonwealth v. Roots*, 306 A.2d 873, 876 (Pa. 1973); *Commonwealth v. Rush*, 121 A. 111 (Pa. 1923). *Cf Commonwealth v. Molina*, 104 A.3d 430, 451 (Pa. 2014) (right against self-incrimination prohibits use of a defendant's pre-arrest silence as substantive evidence of guilt, unless it falls within an exception such as impeachment of a testifying defendant or in fair response to an argument of the defense); *Commonwealth v. Saxton*, 532 A.2d 352, 357 (Pa. 1987) (exception to the prohibition against admitting evidence of prior crime exists where such evidence is offered by the Commonwealth to rebut statements which create inferences favorable to the accused).

Finally, this evidence was cumulative. About a week and half after the robbery, Ms. Draughon picked [Appellant's] picture from a photo array in less than a minute. At trial, Ms. Draughon explained that [Appellant's] face was one she would never forget. N.T., 6/2/15 p. 37. She identified [Appellant] again at trial and her identification was unshakable under cross examination. She explained that employer training included "how to handle a robbery," and she testified on direct that "when a robbery occurs, you're pretty much supposed to stay

calm, not to give the person too much eye contact, try to get a description without actually physically looking at them directly. You know, you're supposed to give them all the money, whatever they ask for, whatever they want. Don't try to play hero. Once – once the perpetrator leaves, you're supposed to lock the door, call 911, call your store manager, call your district manager, call loss prevention." *Id.* at 34. On direct and cross-examination, Ms. Draughon reiterated that, in accord with her training, she purposefully looked at [Appellant's] face without him noticing and that she took note of his facial features. *Id.* at pp. 29, 44. The observations made during the robbery allowed Ms. Draughon to identify [Appellant] without hesitation. Ms. Draughon's unwavering identification rendered the testimony of Ms. Peters merely cumulative given the facts of this case.

Trial Court Opinion, 10/29/15, at 8-10 (emphasis added).

Based on the foregoing, we find no abuse of discretion by the trial court in denying Appellant's two requests for a mistrial. Our review confirms that Appellant was not deprived of a fair and impartial trial, and in neither instance of Detective Herron or Ms. Peters' testimony was the "extreme remedy" of a mistrial warranted. *Laird*, *supra*.

Finally, in his third issue, Appellant challenges his probationary sentence for terroristic threats, and argues that his conviction for terroristic threats should have merged with his robbery conviction. Appellant cites 42 Pa.C.S.A. § 9765, which provides, "[n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of

the other offense.  Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense."

Appellant was convicted of robbery, defined as follows.

**§ 3701. Robbery**

**(a) Offense defined.—**

> (1) A person is guilty of robbery if, in the course of committing a theft, he:
>
> …
>
> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

18 Pa.C.S.A. § 3701(a)(1)(ii).

Appellant was also convicted of terroristic threats, defined as follows.

**§ 2706. Terroristic threats**

**(a) Offense defined.--**A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

> (1) commit any crime of violence with intent to terrorize another[.]

18 Pa.C.S.A. § 2706(a)(1).

Appellant asserts that "the only threatening words and deeds employed during the robbery of the Dollar Store were those actions of … pointing the gun at [Ms. Draughon] and directing her to 'open the safe or I'll blow your head off.'"  Appellant's Brief at 32, *citing Commonwealth v. Walls*, 449 A.2d 690 (Pa. Super. 1982) (terroristic threats merged with robbery where there were no additional facts supporting the terroristic

- 13 -

threats charge that was "part and parcel" of the robbery). Appellant thus concludes that "the terroristic threats of which [Appellant] was found guilty of making were 'part and parcel' of the theft of the money from the store safe." *Id.* The Commonwealth and the trial court agree. Commonwealth Brief at 24-26; Trial Court Opinion, 10/29/15, at 12-13 (requesting remand for resentencing). As the record supports this consensus, we vacate Appellant's judgment of sentence and remand for re-sentencing. *See Commonwealth v. Dobbs*, 682 A.2d 388, 392 (Pa. Super. 1996) (noting that while this Court has the option of amending an illegal sentence directly or remanding it to the trial court for re-sentencing, "[i]f a correction by this [C]ourt may upset the sentencing scheme envisioned by the trial court, the better practice is to remand"). We specifically vacate the entire judgment of sentence, including Appellant's convictions of robbery and PIC, and remand to the trial court for further sentencing proceedings on all three convictions. *See, e.g.*, *Commonwealth v. Moody*, 441 A.2d 371, 375 (Pa. Super. 1982) (noting that "where a conviction on one count may have influenced sentencing on other counts, all sentences should be vacated and the case remanded for resentencing").

Judgment of sentence vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/6/2016