COMMONWEALTH of Pennsylvania,
Appellee

v.

Louis Alexander MATTHEWS,
Appellant.

Superior Court of Pennsylvania.

Submitted July 16, 2001

Filed Sept. 7, 2001.

M. Susan Ruffner, Public Defender, Pittsburgh, for appellant.

Kevin F. McCarthy, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before: EAKIN, JOYCE and KELLY, JJ.

JOYCE, J.

¶ 1 Louis Alexander Matthews (Appellant) appeals from the judgment of sentence imposed by the trial court on July 27, 2000 following his conviction, by a jury, of the crime of burglary.[1] Upon review, we vacate the judgment of sentence and remand for further proceedings.

¶ 2 The trial court has provided an apt summary of the pertinent facts of this case as follows:

Josephine Clements, an 82–year old resident of Stowe Rocks, testified that at approximately 11:45 p.m. on September 10, 1999, she was at home watching television. She heard a noise and went upstairs to investigate. She saw the windows in her bedroom open and clothes pulled out of the dresser drawers. On the far side of the bed, she observed a man lying on the floor. The man, whom she identified as the defen-

---

1. 18 Pa.C.S.A. § 3502.

dant, got up and ran toward her. He pointed a screwdriver at her neck and said, "Give me your purse. Give me your money." The defendant then grabbed her purse, ran down the stairs and out the front door.

Trial Court Opinion, 12/18/2000, at 2.

¶ 3 The Commonwealth presented testimony that Appellant made incriminating statements to Detective Leffler. According to Detective Leffler, after examining the criminal complaint against him, Appellant remarked that "she [the victim] didn't have a lot of this stuff." N.T. Trial, 5/10/2000, at 172. The Commonwealth also presented the testimony of Detective Kozlowski who stated that Appellant volunteered the following statement when he was being fingerprinted: "I just want to let you know I didn't hold no screwdriver to her throat. I have done a lot of f* * * *d up s* *t in my life, but I didn't do that." N.T. Trial, 5/10/2000, at 136. According to the Commonwealth, Appellant's knowledge of these facts indicates his involvement in the crimes charged[2] because these facts were not circulating within the community. In his defense, Appellant sought to introduce evidence showing that his knowledge of these facts does not indicate his involvement in the crimes and that he learned of the facts from Robert DeSantis. DeSantis testified on direct examination that he told Appellant's family certain facts about the crimes: that an elderly woman was robbed, that she came from her bedroom and confronted the perpetrator who then threatened her with a screwdriver before fleeing. N.T. Trial, 5/10/2000, at 190–193.

¶ 4 On cross-examination, the Commonwealth sought to introduce evidence that DeSantis is Appellant's parole officer. Defense counsel promptly objected to this attempt by the Commonwealth to reveal Appellant's relationship with DeSantis. N.T. Trial, 5/10/2000, at 193. At a sidebar discussion, the Commonwealth stated that its reason for attempting to reveal this relationship was because Appellant's purpose in introducing DeSantis' testimony was to falsely suggest to the jury that facts about the crimes were circulating within the community at large. The Commonwealth argued that the jury should be told of DeSantis' relationship with Appellant to combat this false impression. The trial court agreed with the Commonwealth and permitted the prosecutor to elicit testimony from DeSantis that he is Appellant's state parole officer. N.T. Trial, 5/10/2000, at 194–196.

¶ 5 On May 11, 2000, the jury found Appellant guilty of the crime of burglary but found him not guilty of the crime of robbery. On July 27, 2000, Appellant was sentenced to serve a period of incarceration of not less than ten years nor more than twenty years. This timely appeal followed. Subsequently, Appellant filed a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b), following which the trial court filed an opinion dated December 18, 2000.

¶ 6 In this appeal, Appellant presents the following questions for our review:

1. Did the trial court erroneously allow the Commonwealth to establish that Appellant[,] Matthews' lead witness was his state parole officer?

2. Did sentencing counsel ineffectively fail to object to the trial court's decision to deviate from the Sentencing Guidelines based on Guidelines factors?

Brief for Appellant, at 5.

¶ 7 With regard to the first issue, our standard of review is well settled. "[A]n appellate court may reverse a trial

2. Appellant was charged with burglary and robbery.

court's ruling regarding the admissibility of evidence only upon a showing that the trial court abused its discretion." *Commonwealth v. Minerd*, 562 Pa. 46, 753 A.2d 225, 229 (2000) *citing Commonwealth v. Hawk*, 551 Pa. 71, 709 A.2d 373, 376 (1998). In determining the admissibility of evidence, the trial court must decide whether the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect. *Commonwealth v. Crews*, 536 Pa. 508, 640 A.2d 395 (1994). We will be guided by these standards in our review of the trial court's evidentiary rulings.

■ ¶ 8 Appellant argues that the trial court erroneously allowed the Commonwealth to establish that one of Appellant's witnesses, Robert DeSantis, was his state parole officer. We agree. As a factual matter, the Commonwealth's assertion that Appellant falsely suggested to the jury through DeSantis' testimony that facts about the crimes were circulating within the community at large is baseless. As Appellant correctly points out, DeSantis never testified or suggested he learned of the details of the crimes via community gossip; rather he expressly informed the jury that he learned the details of the burglary and robbery from a Stowe Township police officer, named Patton.[3] DeSantis could not have been more specific about how he learned of the details of the crimes. DeSantis' testimony on direct examination did not create the false impression alleged by the Commonwealth. As such, it was error for the trial court to permit the Commonwealth to reveal DeSantis' position as Appellant's parole officer to combat a false impression that was never created in the first place.

¶ 9 Even if assuming for the sake of argument that DeSantis' testimony created the false impression alleged by the Commonwealth, admitting testimony regarding Appellant's status as a parolee has serious evidentiary implications. Under Pa.R.E. 404(b):

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

¶ 10 By informing the jury that DeSantis is Appellant's parole officer, the Commonwealth in effect told the jury that Appellant is a convicted criminal; that Appellant's criminal conviction was for an offense serious enough that it resulted in incarceration (one can only be on parole after a period of incarceration). When reviewed in light of Pa.R.E. 404(b), this evidence presented by the Commonwealth clearly constitutes evidence of other crimes committed by Appellant. While recognizing that evidence of other unrelated criminal conduct is generally inad-

3. The relevant portion of DeSantis' testimony reads as follows:

Q[by defense counsel]: You don't happen to remember—how you became aware of this information?

A[by DeSantis]: I was talking to a police officer from Stowe Township.

Q: Do you happen to remember the name of the police officer?

A: Officer Patton.

Q: Patton?

A: Yes, sir.

N.T. Trial, 5/10/2000, at 192–193.

missible, the Commonwealth argues that the evidence of Appellant's other crimes at issue in this case falls within an exception recognized by our Supreme Court in *Commonwealth v. Saxton*, 516 Pa. 196, 532 A.2d 352, 357 (1987) and by our Court in *Commonwealth v. Powers*, 395 Pa.Super. 231, 577 A.2d 194 (1990). Under the principles enunciated in these cases, the Commonwealth may introduce evidence of a defendant's prior crimes in order to rebut statements which create improper or false inferences favorable to the defendant. The Commonwealth's reliance on *Saxton* and *Powers* is misplaced. *Saxton*, involved allegations of ineffectiveness due to counsel's failure to object to the testimonial reference by a police detective to the fact that the police had the appellant's photograph and fingerprints when they investigated the killing involved in that case. As the Court noted:

> The defense offered testimony seeking to establish that the accused had continued to reside at his home for six weeks after the murder and that the police had made no effort to take him into custody during that period. The inference which the defense sought to promote was that, at least at the outset of the investigation, the appellant was not a suspect.... [T]he detective's testimonial reference was offered to show that the police did in fact make a diligent effort to locate the defendant during the period in question, and that they did so by means which included using the resources of the National Crime Information Center and distributing a "wanted circular" for the defendant's arrest. The informational source from which they proceeded in their search was the photograph and fingerprints alluded to by the detective. Such testimony on behalf of the Commonwealth clearly did not violate the prohibition against referring to prior, unrelated offenses of an accused.

*Saxton*, 532 A.2d at 357. In *Powers*, at trial, the defendant specifically testified on cross-examination that he had never shown his x-rated video tapes to any of his grandchildren. The trial court ruled, and we agreed, that in that instance the Commonwealth was permitted to rebut this testimony with testimony of another grandchild that the defendant had shown his x-rated movies to her. *See Powers*, 577 A.2d at 196. We also opined that:

> The rebuttal evidence, rather than indicating an isolated and unrelated prior bad act, indicated an event which formed a part of a *pattern* of sexual abuse of the young female relatives placed in Appellant's care by the children's unsuspecting parents. Such evidence was relevant to show *design*, and was highly corroborative of the victim's testimony regarding the continuing and escalating course of sexual abuse committed.

*Id.* at 196–97 (emphasis in the original). Thus, it can be seen that in both *Saxton* and *Powers*, unlike the case *sub judice*, the evidence of other crimes was introduced to rebut specific false statements/impressions made or created by the. defense. In the instant case, DeSantis never testified that he obtained details about the crimes from community gossip or rumor. To the contrary, he specifically testified that he obtained this information from a Stowe Township police officer named Patton. Thus, DeSantis' testimony could not have created the false impression that he got the information through any other means. Moreover, assuming *arguendo* that DeSantis' testimony created the impression alleged by the Commonwealth, the prosecutor could have **specifically** asked DeSantis how he became aware of the details of the crime, or whether he got the details of the crime through community gossip/rumor. The answers to these questions would have dispelled any false impressions about the source of DeSantis' information without

revealing his status as Appellant's parole officer. Instead of adopting this approach, the prosecutor introduced the highly prejudicial testimony that DeSantis is Appellant's parole officer, allegedly to correct any false impressions regarding the source of DeSantis' knowledge of the details of the crime. Pursuant to Pa.R.E. 404(b)(3), we find that that the probative value of this evidence does *not* outweigh its potential for prejudice. To the contrary, the marginal probative value of this evidence is far outweighed by the potential for prejudice and confusion of the jury. The trial court therefore erred in permitting the Commonwealth to introduce this evidence at trial over Appellant's objections. We also conclude that the cautionary instruction given to the jury by the trial court regarding this evidence was insufficient to remedy the prejudice suffered by Appellant.[4] Appellant is therefore entitled to a new trial. In light of our resolution of the first issue raised by Appellant, our review of the second issue is unnecessary.

¶ 11 Having determined that the trial court erred in permitting the Commonwealth to introduce evidence of Appellant's other crimes in violation of Pa.R.E. 404(b), we will vacate Appellant's judgment of sentence and remand for a new trial.

¶ 12 Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

¶ 13 EAKIN, J. files Concurring Opinion.

EAKIN, J., Concurring.

¶ 1 I join the thoughtful and accurate decision of my colleagues, but use a slightly different analysis, and thus write separately.

¶ 2 The relevant inference to be drawn from the knowledge of undisclosed details is that only the perpetrator knew those details. It is true, as the Commonwealth suggests, that if those details were in general circulation, the inference is gone, for appellant may have learned them outside perpetration of the crime; thus they should be able to rebut that notion.

¶ 3 However, the real issue is whether the details made it to appellant from *any* source, whether "general circulation" or otherwise. Negating the "general circulation" theory here does not resurrect the inference, for it is uncontradicted DeSantis knew and passed details to appellant. Whether he was in law enforcement or part of the general community, this precludes the inference the Commonwealth seeks. As appellant got the details from a source other than perpetration of the crime, it is irrelevant whether DeSantis was in law enforcement, read it in the paper, or made the whole thing up himself. Identifying DeSantis' occupation did not change the uncontradicted fact that he gave appellant these details. Because he did, knowledge of the details cannot support an inference appellant was the perpe-

---

**4.** The cautionary instruction which was given at the close of all evidence the day after DeSantis' testimony is as follows:

> You have heard the testimony that the Defendant [Appellant] has a parole agent[;] he called his parole agent to testify in this matter.
> You may not speculate as to why the Defendant [Appellant] is on parole, nor are you to draw any adverse inference to him from that simple fact.

> The relationship of that witness to the Defendant [Appellant] ... was given to you only to explain what place that person made in this whole scenario [*sic*], and why that person had knowledge of the crime. He testified that he received that information from one of the local police officers. N.T. Trial, 5/11/2000, at 289.

trator; as such, it does not comprise relevant evidence bearing upon appellant's guilt. Therefore, I agree admission of DeSantis' occupation was error.