# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### January 2013 Term

_____

No. 11-0915

_____

FILED

**February 21, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
Plaintiff Below, Respondent

V.

**GARY RICHARD BAKER,**
Defendant Below, Petitioner

_____

**Appeal from the Circuit Court of Greenbrier County**
**Honorable Joseph C. Pomponio, Judge**
**Criminal Action No. 09-F-100**

**REVERSED AND REMANDED**
_____

Submitted: January 23, 2013
Filed: February 21, 2013

James D. Parmer
Kanawha County Public Defender's Office
Charleston, West Virginia
Attorney for Petitioner

Patrick Morrissey
Attorney General
Scott E. Johnson
Senior Assistant Attorney General
Attorneys for Respondent

JUSTICE DAVIS delivered the Opinion of the Court.

JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.

**SYLLABUS BY THE COURT**

1.      "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard."  Syllabus point 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

2.      "Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility.  Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986).  After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b).  If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence.  If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence

i

is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence." Syllabus point 2, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

4. "Events, declarations and circumstances which are near in time, causally connected with, and illustrative of transactions being investigated are generally considered *res gestae* and admissible at trial." Syllabus point 3, *State v. Ferguson*, 165 W. Va. 529, 270 S.E.2d 166 (1980), *overruled on other grounds by State v. Kopa*, 173 W. Va. 43, 311 S.E.2d 412 (1983).

5. Evidence of a defendant's parole status should be considered evidence of other crimes for purposes of analysis under Rule 404(b) of the West Virginia Rules of Evidence.

6. "Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support

the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury." Syllabus point 2, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979).

**Davis, Justice:**

Gary Richard Baker (hereinafter "Mr. Baker") appeals from an order of the Circuit Court of Greenbrier County sentencing him to life imprisonment upon a conviction of robbery in the second degree,[1] and imprisonment for not less than five nor more than eighteen years upon a conviction for attempted robbery in the second degree.[2] Before this Court, Mr. Baker argues that it was reversible error for the trial court to admit evidence that he was previously convicted of crimes in 2000, and that he was on parole when the instant crimes occurred.[3] After a careful review of the brief and the record submitted on appeal, and having listened to the arguments of the parties, we reverse and remand for a new trial.[4]

## I.

## FACTUAL AND PROCEDURAL HISTORY

On March 15, 2009, at around 11:30 p.m., Whitney Smith (hereinafter "Ms. Smith"), an employee of a Subway restaurant in Fairlea, Greenbrier County, West Virginia,

---

[1]The sentence of life imprisonment was imposed under the recidivist statute, W. Va. Code § 61-11-18(c) (2000) (Repl. Vol. 2010).

[2]The sentences were ordered to run consecutively.

[3]Mr. Baker also assigned error to matters involving his recidivist proceeding.

[4]While this case was pending, Attorney General Patrick Morrissey was sworn in and replaced former Attorney General Darrell V. McGraw, Jr. *See* W. Va. R. App. P. 41(c) ("When a public officer is a party to an appeal or other proceeding in the Supreme Court in his official capacity and during its pendency . . . ceases to hold office, the action does not abate and his successor is automatically substituted as a party.").

1

was closing the store when a man approached her with what appeared to be a handgun and forced her to reenter the store. The man was wearing a mask over his face and a red hooded sweatshirt. The man ordered Ms. Smith to open the restaurant safe. She could not comply because the safe had a time lock. Unable to obtain money from the safe, the man robbed Ms. Smith and fled the scene.[5]

The investigation of Mr. Baker as a suspect in the robbery began after he was observed by officer R. Honaker parked along a highway in Greenbrier County several hours after the robbery.[6] Officer Honaker asked Mr. Baker if he was experiencing car trouble. Mr. Baker stated that he was not. Officer Honaker left Mr. Baker without incident. However, after subsequently learning of the robbery, Officer Honaker informed the robbery investigating officer, B. Hunt, that he, Officer Honaker, had seen a person fitting the description of the robbery suspect.[7] Officer Honaker identified the person he saw on the highway as Mr. Baker. During Officer Hunt's investigation, it was learned that a car which resembled Mr. Baker's car was seen at the Subway restaurant shortly before the robbery. It was also learned that Mr. Baker had a pellet pistol in his car that fit the description of the

---

[5]Ms. Smith testified that the robber took $100.00 from her.

[6]Mr. Baker lived in Huntington, West Virginia.

[7]Ms. Smith only able to identify the robber only as being a white male, six feet tall, and heavy set. Although there were a surveillance cameras both inside and outside the store, the images of the robber were not sufficiently clear to make a positive identification.

2

weapon used in the robbery. Mr. Baker eventually was indicted for robbery of Ms. Smith and attempted robbery of the Subway restaurant.

Prior to the trial, Mr. Baker filed a motion to preclude the State from introducing evidence that he previously had been convicted of crimes in 2000[8] and that he was on parole at the time the robbery occurred.[9] The trial court granted the motion. Nevertheless, during the trial, the State moved the court to allow it to introduce the evidence, on the grounds that Mr. Baker had "opened the door" for the evidence during his cross-examination of a State's witness. The trial court agreed with the State and permitted the introduction of evidence of the prior convictions and parole.[10] The jury eventually returned a verdict finding Mr. Baker guilty of both charges. Subsequent to a recidivist jury trial,[11] Mr. Baker filed this appeal.

---

[8]Mr. Baker had been convicted of four counts of felony wanton endangerment. He also had been convicted of a felony offense in 1988; however, the State did not seek to introduce evidence of that crime.

[9]The State also had filed motions to admit the same evidence.

[10]Mr. Baker called two defense witnesses during the trial; but he did not testify.

[11]The recidivist jury found Mr. Baker had previously been convicted of five felony offenses.

3

## II.

## STANDARD OF REVIEW

The dispositive issue presented in this appeal is whether the trial court properly allowed the State to introduce evidence of Mr. Baker's prior convictions and parole status. With regard to this Court's review of a trial court's ruling on the admissibility of evidence, we have held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

Additionally, because the Court believes that the evidence Mr. Baker finds objectionable is best classified as evidence of other crimes, wrongs, or acts, we must review its admission pursuant to the standard of review for the admission of evidence under Rule 404(b) of the West Virginia Rules of Evidence. We previously have indicated:

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. LaRock*, 196 W. Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996) (footnote and citations omitted). With these standards to guide us, we now will proceed to the merits of this appeal.

## III.

## DISCUSSION

Mr. Baker argues that he did not "open the door" to the admission of evidence of his prior convictions in 2000 and his parole status. The State agrees with Mr. Baker. In its brief, the State concedes that "neither the State nor the defendant opened the door, the door was opened by Mr. Smith (a State witness)." Although the State concedes that Mr. Baker did not open the door for the introduction of the evidence, the State contends that the evidence was admissible on alternative grounds. In support of this contention, the State relies upon the decisions of this Court which hold that we may "affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court[.]" Syl. pt. 3, in part, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965). *See also Schmehl v. Helton*, 222 W. Va. 98, 106 n.7, 662 S.E.2d 697, 705 n.7 (2008) ( "[T]his Court may in any event affirm the circuit court on any proper basis, whether relied upon by the circuit court or not."); *Murphy v. Smallridge*, 196 W. Va. 35, 36-37, 468 S.E.2d 167, 168-69 (1996) ("An appellate court is not limited to the legal grounds relied upon by the circuit court, but it may

affirm or reverse a decision on any independently sufficient ground that has adequate support."). We will address separately below whether the State is correct in conceding error and whether we should affirm the judgment based upon the State's alternative grounds for the admission of the evidence.

**A. Mr. Baker Did Not Open the Door to Admit Previously Suppressed Evidence**

As noted earlier, the State has conceded that Mr. Baker did not open the door for the admission of evidence of his prior convictions and parole status. As a general rule, "[t]his Court is not obligated to accept the State's confession of error in a criminal case. We will do so when, after a proper analysis, we believe error occurred." Syl. pt. 8, *State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991). *See also State v. Allah Jamaal W.*, 209 W. Va. 1, 4 n.7, 543 S.E.2d 282, 285 n.7 (2000) ("Mere confession of error by the State, of course, does not dictate the hand of this Court nor the outcome of this case." (internal quotations and citations omitted)); *State v. Berrill*, 196 W. Va. 578, 587, 474 S.E.2d 508, 517 (1996) ("[C]onfessions of error do not automatically entitle a party to a reversal, reversal is required when it can be ascertained that the errors confessed are supported by law." (internal quotations and citations omitted)).

The trial court made a pretrial ruling that the State could not introduce evidence that Mr. Baker had prior convictions or that he was on parole when the crimes occurred in

this case. During the trial, the State took the position that Mr. Baker committed the crimes in an effort to get revenge against a prior owner of the Subway store, Donald Smith (hereinafter "Mr. Smith").[12] Mr. Smith had employed Mr. Baker at the restaurant for a little over a week in 1999. Due to Mr. Baker's poor work performance, Mr. Smith fired him. The State sought to establish that Mr. Baker harbored animosity against Mr. Smith for firing him. Therefore, he attempted to rob the store some ten years later. In order to explain the ten-year time lapse, the State wanted the jury to know that Mr. Baker had been in prison during that time and, therefore, could not seek revenge until he was released from prison. Although the trial court initially rejected the State's efforts to introduce the evidence, the court reversed its ruling during the trial based upon Mr. Smith's testimony during the State's direct examination and Mr. Baker's cross-examination. During the State's direct examination of Mr. Smith, the following was brought out:

> Q. Are you familiar with the defendant, Gary Richard Baker?
>
> . . . .
>
> A. He was an employee of mine for a little over a week, in December of '99.
>
> Q. You hired him in the summer of '99?
>
> A. Yes, I did.
>
> Q. And, at some point, you dismissed his employment, in the summer of '99. Is that correct?

---

[12]The record does not show whether Mr. Baker knew that Mr. Smith did not own the restaurant at the time of the crimes.

A. Correct.

. . . .

Q. How did Mr. Baker feel about that?

A. He wasn't too happy about it.

Q. Did you have a confrontation with Mr. Baker regarding his letting go?

. . . .

A. He accused me of being prejudiced against him. I explained to him it was strictly job performance and there was no other discussion, as far as I was concerned, on the matter.

During Mr. Baker's cross-examination of Mr. Smith the following relevant interrogation occurred:

Q. And summer of '99, is when the confrontation between you and Gary Baker took place?

A. That's when the incident occurred, yes.

Q. 10 years ago, this past summer?

A. That's correct.

The State did not make any objections during Mr. Baker's brief cross-examination of Mr. Smith. However, the day after Mr. Baker's cross-examination of Mr. Smith, the State argued that the above-quoted passage from the cross-examination "opened

the door" for it to introduce evidence of Mr. Baker's prior convictions and parole status.[13] The State made the argument that, by simply asking "10 years ago, this past summer," Mr. Baker exceeded the scope of direct examination and, therefore, the jury needed to be informed as to why Mr. Baker could not have attempted to rob the store for revenge during those 10 years. The trial court agreed with this argument. We do not.

The opening the door "doctrine operates to prevent a defendant from successfully excluding from the prosecution's case-in-chief inadmissible evidence and then selectively introducing pieces of this evidence for the defendant's own advantage, without allowing the prosecution to place the evidence in its proper context." *State v. James*, 677 A.2d 734, 742 (N.J. 1996). The decision in *James* added that

> [t]he "opening the door" doctrine is essentially a rule of expanded relevancy and authorizes admitting evidence which otherwise would have been irrelevant or inadmissible in order to respond to (1) admissible evidence that generates an issue, or (2) inadmissible evidence admitted by the court over objection.

_____

[13]Mr. Baker did not assign error to the issue of the timeliness of the State's objection to the question he posed to the witness. Consequently, we will not address what would appear to have been an untimely objection. *See* 1 Franklin D. Cleckley, Louis J. Palmer, Jr., and Robin Jean Davis, *Handbook on Evidence for West Virginia Lawyers*, § 103.03[2][a] (5th ed. 2012) ("In addition to the requirement of specificity, Rule 103(a)(1) has a timeliness requirement for . . . objections. . . . To be timely under this rule, a protest should be registered as soon as the defect becomes apparent.").

*James*, 677 A.2d at 742.[14]  We do not believe that Mr. Baker's cross-examination of Mr.

Smith generated an issue that warranted the admission of evidence of his prior convictions

and parole status, or elicited inadmissible evidence. In fact, Mr. Baker's cross-examination

was proper.

Mr. Baker did not inject anything new into the case by posing the question "10

years ago, this past summer."  This was proper cross-examination that merely summarized

what the State elicited from Mr. Smith on direct examination, *i.e.*, that Mr. Baker worked at

the store in 1999, which was about ten years before the crimes in the case.  The following

observations have been made with respect to the scope of cross-examination,

> [n]ormally, the scope of cross-examination is limited to
> the subject matter[,] or issues[,] or events to which the witness
> testified on direct examination. . . .  *[This] means the subject
> matter opened up, such as: (1) the period of time*; (2) the
> relationship between two parties; or (3) an element of the
> offense. . . .  It is always permissible to inquire into the details of
> the events testified to on direct.  Statements relate to the direct
> testimony of a witness when they relate generally to the events
> and activities [to which the witness] testified.

---

[14]We will note that in this appeal Mr. Baker argued in his brief that the evidence was admitted in violation of the curative admissibility rule.  *See* Syl. pt. *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995) (setting out elements of the curative admissibility rule).  Further, during oral argument counsel for Mr. Baker suggested the issue was one of "invited error."  *See State v. Crabtree*, 198 W. Va. 620, 627, 482 S.E.2d 605, 612 (1996) (discussing invited error).  Insofar as Mr. Baker did not raise below the issues of curative admissibility and invited error, we will not address these doctrines.

1 Cleckley, Palmer, and Davis, *Handbook on Evidence*, § 611.02[3][d][iv] (emphasis added).

The State introduced the subject of "time" through its direct examination of Mr. Smith.

Therefore, Mr. Baker had an unassailable right to cross-examine Mr. Smith about this subject.

Insofar as Mr. Baker's cross-examination was proper, the trial court clearly abused its

discretion by allowing the State to introduce the evidence of prior convictions and parole on

the grounds that Mr. Baker opened the door to such evidence.[15]


**B.  Admissibility of Mr. Baker's Prior Convictions.**

The State argued below that evidence of Mr. Baker's prior convictions was

admissible under Rule 404(b) of the West Virginia Rules of Evidence to establish motive and

intent.[16]  Rule 404(b) states, in part,

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

[15]We summarily reject the State's contention that, insofar as Mr. Smith opened the door by mentioning 1999, it should have been allowed to introduce the evidence.  The State may not introduce inadmissible evidence at trial merely because a witness it called allegedly wrongfully injected an issue in the case during direct examination.  Assuming, for the sake of argument, that Mr. Smith's response to the State's question was error, "we regularly turn a deaf ear to error that was invited by the complaining party."  *In re Tiffany Marie S*., 196 W. Va. 223, 233, 470 S.E.2d 177, 187 (1996).

[16]The State has presented an alternative reason as to why the admission of evidence pertaining to Mr. Baker's parole was proper.  This issue is discussed at Section III. C., *infra*.

We have "stated that Rule 404(b)'s list of 'other purposes' is illustrative only, and the exceptions to the admission of collateral crimes listed in the rule are not meant to be exhaustive." *State v. Rash*, 226 W. Va. 35, 47, 697 S.E.2d 71, 83 (2010) (internal quotations and citation omitted). With respect to the admission of Rule 404(b) evidence, this Court has held that

> [w]here an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an in camera hearing as stated in *State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syl. pt. 2, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

The trial court applied the *McGinnis* analysis in a pretrial order and concluded that evidence of Mr. Baker's prior convictions would not be admissible either to explain Mr.

12

Baker's whereabouts between 1999 and the time of the crime, or to prove a motive of revenge against Mr. Smith. The trial court's order summarized the matters as follows:

> Under Rule 403, the probative value of admitting this evidence merely to explain the lapse in time between the Defendant's threats to Mr. Smith and the commission of the crimes charged . . . is substantially outweighed by the danger of unfair prejudice to the Defendant, in that the jury may conclude that because the defendant was convicted of the crimes in 99-F-80 he is more likely to have committed the crimes charged in the current manner [sic]. Therefore, WVRE Rule 403 bars the admission of the Defendant's conviction in 99-F-80 to explain the lapse in time between the Defendant's threats to Mr. Smith and the occurrence of the crimes charged. . . . .
>
> To the extent that the State wishes to use the Defendant's conviction in 99-F-80 to prove that the commission of the crimes charged . . . was an act of revenge against Mr. Smith, it is also denied. The crimes charged in 99-F-80 had nothing to do with Mr. Smith and do not have any relevance in proving or disproving a fact in consequence–namely the Defendant's motive against Mr. Smith. Further, the evidence of the Defendant threatening Mr. Smith, the Defendant's termination by Mr. Smith, and his knowledge of the location of the crimes charged . . . is not derived from the Defendant's conviction in 99-F-80. Because the Defendant's conviction in 99-F-80 is not relevant to understand the motive of the perpetrator . . ., this Court does not need to weigh this purported purpose for introducing 404(b) evidence under WVRE Rules 402 and 403.

The State has not offered any relevant contention to refute the trial court's pretrial determination that Mr. Baker's prior convictions were not admissible under Rule 404(b). Morever, we agree with the trial court's determination that, under Rule 403, the probative value of evidence of Mr. Baker's prior convictions was outweighed by its

13

prejudicial effect. Our deference to the trial judge is consistent with the general rule that "[a] reviewing court should defer to the ruling of the trial court on a Rule 403 issue, unless the ruling is an arbitrary or irrational exercise of discretion." 1 Cleckley, Palmer and Davis, *Handbook on Evidence*, § 403.02[2][a]. The trial judge's pretrial ruling was neither arbitrary nor irrational.

### C. Mr. Baker's Prior Convictions as Intrinsic Evidence.

The State contends, as an alternative argument, that evidence of Mr. Baker's prior convictions was intrinsic to the crimes in this case and, therefore, Rule 404(b) did not apply.[17] In *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996), this Court explained that evidence which is "intrinsic" to the indicted charge is not governed by Rule 404(b). We stated in footnote 29 of *LaRock*,

> [i]n determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we first must determine if the evidence is "intrinsic" or "extrinsic." "Other act" evidence is "intrinsic" when the evidence of the other act and the evidence of the crime charged are "inextricably intertwined" or both acts are part of a "single criminal episode" or the other acts were "necessary preliminaries" to the crime charged. If the proffer fits into the "intrinsic" category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof charged in the indictment.

---

[17]"Since Rule 404(b) was enacted, the term res gestae has largely given way to its modern, de-Latinized descendant: intrinsic evidence[.]" *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010) (internal quotations omitted).

*LaRock*, 196 W. Va. at 312 n.29, 470 S.E.2d at 631 n.29 (additional internal quotations omitted and citations omitted). *See also State ex rel. Kitchen v. Painter*, 226 W. Va. 278, 293, 700 S.E.2d 489, 504 (2010) ("This evidence is inextricably intertwined with the offense . . . [and] is crucial to explaining the sequence of events immediately prior to the attack on the victims. Thus, the evidence is necessary to provide context and to complete the story of the crime.").[18]

---

[18]Some courts have rejected the "inextricably intertwined" test for intrinsic evidence on the grounds that the "test creates confusion because, quite simply, no one knows what it means." *State v. Ferrero*, 274 P.3d 509, 513 (Ariz. 2012) (internal quotations and citation omitted). For example, in *United States v. Green*, 617 F.3d 233, the Third Circuit rejected the "inextricably intertwined" factor and set out the following guidelines for determining whether uncharged acts are intrinsic evidence of the charged crime:

> First, evidence is intrinsic if it "directly proves" the charged offense. This gives effect to Rule 404(b)'s applicability only to evidence of "other crimes, wrongs, or acts." If uncharged misconduct directly proves the charged offense, it is not evidence of some "other" crime. Second, uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.

*Green*, 617 F.3d at 248-49 (internal quotations and citations omitted). *See also Ferrero*, 274 P.3d at 513 ("Henceforth, evidence is intrinsic in Arizona if it (1) directly proves the charged act, or (2) is performed contemporaneously with and directly facilitates commission of the charged act."); *State v. Nelson*, 791 N.W.2d 414, 423 (Iowa 2010) (narrowing the meaning of intrinsic evidence); *State v. Rose*, 19 A.3d 985, 1009 (N.J. 2011) ("To aid courts and litigants in making the threshold determination of whether the evidence relates to 'other crimes' or is intrinsic to the charged crime, we look to the Third Circuit's statement of the test in *United States v. Green*, 617 F.3d 233 (3d Cir. 2010)."). Insofar as neither party has briefed this issue, we need not decide today whether the "inextricably intertwined" test is worthy of remaining in our formulation of what constitutes intrinsic evidence.

We disagree with the State's contention that Mr. Baker's prior convictions for wanton endangerment in 2000 are intrinsic to the charges of robbery and attempted robbery in 2009. This argument fails because, among other reasons, the prior convictions are simply too remote in time to be logically intertwined with the current offenses. For this Court to "[a]ccept[] the State's argument would open the door to abuse of the inextricably intertwined exception." *State v. Freemont*, 817 N.W.2d 277, 291 (Neb. 2012). In Syllabus point 3 of *State v. Ferguson*, 165 W. Va. 529, 270 S.E.2d 166 (1980), *overruled on other grounds by State v. Kopa*, 173 W. Va. 43, 311 S.E.2d 412 (1983), we held that "[e]vents, declarations and circumstances which are *near in time*, causally connected with, and illustrative of transactions being investigated are generally considered *res gestae* and admissible at trial." (Emphasis added). *See also* Syl. pt. 1, *State v. Spicer*, 162 W. Va. 127, 245 S.E.2d 922 (1978) ("Other criminal act evidence admissible as part of the res gestae or same transaction introduced for the purpose of explaining the crime charged must be confined to that which is reasonably necessary to accomplish such purpose.").

Moreover, "[e]vidence of 'other crimes, wrongs, or acts,' intrinsic or not, may improperly invite the jury to convict a defendant because of other misdeeds, not because of his guilt of the crime charged." *Leyva v. State*, 165 P.3d 446, 453 (Wyo. 2007). In other words, intrinsic evidence still is subject to Rule 403's test of prejudicial impact. *See* 1 Cleckley, Palmer and Davis, *Handbook on Evidence*, § 404.03[2][a] ("The admissibility of

16

[this] type [of] evidence is viewed under the standards of Rules 401-403.").[19] Therefore, even if we assumed that the evidence was intrinsic, we still would find it was improperly admitted because its prejudicial impact, in view of the State's weak evidence, far outweighed its probative value.

### D. Evidence of Mr. Baker's Parole Status.

Prior to trial, the State filed a motion to admit evidence of Mr. Baker's parole status because it planned to call his parole officer to testify.[20] The State took the position that the jury needed to know why the parole officer was testifying. The trial court denied the motion and ordered that the parole officer not be identified as such. Before this Court, the State has abandoned its pretrial argument for seeking to introduce the parole status evidence and now contends that such evidence was admissible for another reason under Rule 404(b).

As an initial matter we note, and expressly hold that, "evidence of a defendant's parole status should be considered evidence of other crimes for purposes of [analysis under]

---

[19]In *LaRock,* we said in passing that "evidence of uncharged prior acts which is inextricably intertwined with the charged crime is admissible over a Rule 403 objection." *LaRock*, 196 W. Va. at 313, 470 S.E.2d at 632 (1996). This observation in *LaRock* was not intended to mean that Rule 403 was superfluous in the context of introducing intrinsic evidence. *LaRock* simply meant to convey that a defendant would have an uphill climb in trying to keep the evidence out as being too prejudicial when the State's case was strong.

[20]The parole officer was going to testify that she found the pellet pistol in Mr. Baker's car, as well as about other matters.

17

Rule 404(b)" of the West Virginia Rules of Evidence. *United States v. Manarite*, 44 F.3d

1407, 1418 (9th Cir. 1995). It also has been recognized that

> evidence of a defendant's . . . parole status and relevant
> conditions thereof are admissible in the proper exercise of
> judicial discretion if such evidence demonstrates the motive for,
> or otherwise explains, the defendant's alleged criminal conduct.
> . . . . Absent that scenario, such evidence is inadmissible because
> . . . [w]e cannot imagine too many other instances where
> informing the jury about the defendant's . . . parole status . . .
> could be more relevant than prejudicial.

*State v. Kourtidias*, 557 N.W.2d 858, 863 (Wis. Ct. App. 1996) (internal quotations and

citation omitted).

In this appeal, the State contends that Mr. Baker was behind in his rent and that,

if he did not pay his rent, his "parole status would be adversely affected." Consequently, the

State now suggests that Rule 404(b) allowed the evidence to be introduced to show that Mr.

Baker was motivated to commit the crimes in order to prevent adverse consequences to his

parole status. We reject this argument.

Under the facts of this case, the prejudicial impact of evidence of Mr. Baker's

parole status is no less than that of evidence of his prior convictions. It would be inexplicably

inconsistent for this Court to find that evidence of Mr. Baker's prior convictions was too

prejudicial to introduce to the jury yet allow the jury to be informed that he was on parole

when the offenses were committed. Obviously, the jury would surmise that Mr. Baker was

18

a convicted felon if it was informed that he was on parole. For example, a similar issue was faced by the court in *Commonwealth v. Matthews*, 783 A.2d 338 (Pa. Super. Ct. 2001). In *Matthews,* the defendant was convicted of burglary. During his trial, the State was allowed to inform the jury that a witness called by the defendant was in fact the defendant's parole officer. On appeal, the defendant argued that it was reversible error to allow the State to inform the jury that he was, in effect, on parole at the time of the crime. The appellate court agreed as follows:

> By informing the jury that DeSantis is [the defendant's] parole officer, the Commonwealth in effect told the jury that [the defendant] is a convicted criminal; that [the defendant's] criminal conviction was for an offense serious enough that it resulted in incarceration (one can only be on parole after a period of incarceration). When reviewed in light of Pa.R.E. 404(b), this evidence presented by the Commonwealth clearly constitutes evidence of other crimes committed by Appellant. . . .

> . . . .

> [W]e find that the probative value of this evidence does not outweigh its potential for prejudice. To the contrary, the marginal probative value of this evidence is far outweighed by the potential for prejudice and confusion of the jury. The trial court therefore erred in permitting the Commonwealth to introduce this evidence at trial over [defendant's] objections. We also conclude that the cautionary instruction given to the jury by the trial court regarding this evidence was insufficient to remedy the prejudice suffered by [the defendant]. [The defendant] is therefore entitled to a new trial.

*Matthews*, 783 A.2d at 340-42.

We find, like the court in *Matthews*, that the marginal value of evidence of Mr.

Baker's parole status was far outweighed by its prejudicial impact.

## E.  Harmless Error.

Although we have determined that it was error for the trial court to admit

evidence of Mr. Baker's prior convictions and parole status, this does not end our analysis.

We previously have adopted a harmless error test to determine whether the introduction of

improper evidence in some instances constitutes reversible error or was harmless:

> Where improper evidence of a nonconstitutional nature is
> introduced by the State in a criminal trial, the test to determine if
> the error is harmless is: (1) the inadmissible evidence must be
> removed from the State's case and a determination made as to
> whether the remaining evidence is sufficient to convince
> impartial minds of the defendant's guilt beyond a reasonable
> doubt; (2) if the remaining evidence is found to be insufficient,
> the error is not harmless; (3) if the remaining evidence is
> sufficient to support the conviction, an analysis must then be
> made to determine whether the error had any prejudicial effect on
> the jury.

Syl. pt. 2, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979).  *Accord State v. Day*, 225

W. Va. 794, 803, 696 S.E.2d 310, 319 (2010).

We have grave doubts about whether the evidence was sufficient to convict Mr.

Baker after we remove the inadmissible Rule 404(b) evidence.  In other words, this was a very

close evidentiary case.  The strongest evidence the State had was the testimony of Whitney

Smith, the actual victim, that the pellet pistol found in Mr. Baker's car looked like the weapon used by the robber. The State also was able to establish through cellular phone records that Mr. Baker was in the Greenbrier County area shortly after the robbery. These two pieces of circumstantial evidence must be contrasted with the lack of other plausible evidence of guilt. The State did not have any witness to testify that Mr. Baker was the person who committed the crimes. Whitney Smith could not identify Mr. Baker as the robber. Whitney Smith testified that she saw the robber's beard protruding from under the mask. However, the evidence showed that Mr. Baker had a slight mustache and was never known to wear a beard. No one could identify the person on the surveillance tapes as being Mr. Baker. The State called a witness, Kristen Smith, who saw a person near a car in the restaurant parking lot shortly before the crimes were committed. Kristen Smith could not identify the person she saw as being Mr. Baker nor could she positively identify the car. The clothing Mr. Baker was wearing shortly before the robbery was not the clothing identified as being worn by the robber. The police did not find the clothing the robber was identified as wearing. A search of Mr. Baker's home only uncovered the clothing he was seen wearing shortly before the robbery. The State was unable to present any forensic evidence, such as fingerprints, to establish that Mr. Baker was at the scene of the crime.

Because of the extremely weak circumstantial evidence in this case, we simply cannot say with any degree of confidence that the improperly admitted Rule 404(b) evidence

was harmless beyond a reasonable doubt. It has been observed that too often "when a jury hears evidence that a defendant has committed some bad acts beyond those in the indictment, the jury dispenses with any notions that the defendant is innocent and reviews the evidence from the perspective that the defendant is a 'bad person.'" *State v. Willett*, 223 W. Va. 394, 400-01, 674 S.E.2d 602, 608-09 (2009) (Ketchum, J., concurring). *See also State v. Scott*, 206 W. Va. 158, 168, 522 S.E.2d 626, 636 (1999) (Starcher, C.J., dissenting) ("The niceties of a *McGinnis* analysis do little to remove the overwhelming prejudicial effect that is heaped upon a defendant in a criminal case, once a jury learns of the defendant's previous bad acts."). We believe that may have occurred in this case. Therefore, "we remand this matter for retrial." *State v. Ricketts*, 219 W. Va. 97, 102, 632 S.E.2d 37, 42 (2006) (citation omitted).[21]

## IV.

## CONCLUSION

Mr. Baker's convictions and sentences for robbery in the second degree and attempted robbery in the second degree are reversed. This case is remanded for a new trial consistent with this opinion.

Reversed and Remanded.

---

[21]Insofar as we are reversing this case and remanding for a new trial, we need not address Mr. Baker's assignment of error involving the recidivist charge.

22