# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 16-0007** (Berkley County 15-F-58)

**Brannon J. Hamilton,**
**Defendant Below, Petitioner**

**FILED**

**January 6, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Brannon J. Hamilton, by counsel B. Craig Manford, appeals his jury conviction on charges of breaking and entering and petit larceny. Respondent the State of West Virginia, by counsel Benjamin M. Hiller, filed a response in support of the circuit court's order. Petitioner contends that the circuit court erred in limiting his ability to introduce evidence regarding his voluntary alcohol consumption. Further, petitioner contends that the trial court erred in failing to direct a verdict of acquittal in his favor when the evidence presented was insufficient to support a conviction.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At approximately 5:30 a.m., on April 12, 2012, a security alarm sounded at the 19th Hole Cafe ("Cafe").[1] When law enforcement officers responded to the alarm, they secured the exterior of the premises, observed no forced entry, and returned to their detachment. A short time later, the officers were contacted by a representative of the Cafe who, in response to the alarm, reviewed security surveillance video from the Cafe and observed an intruder. The video surveillance footage showed that around 5:00 a.m., a man with a distinctive tattoo fell through the ceiling tile in the kitchen area of the Cafe, where two safes were kept.[2] In the video, the intruder used a tire iron to break apart two safes which were stacked atop one another and bolted

---

[1]The Cafe is a bar/video lottery establishment.

[2]It was subsequently discovered that the ceiling tile in the women's bathroom utility closet (which provided access to the kitchen) had been broken through.

1

together.[3] He then took the smaller of the two safes (which he was unable to open) and placed it in a rolling mop bucket. He pushed the mop bucket out of the Cafe which triggered the alarm system.

The manager of the Cafe advised officers that the man shown in the surveillance video was petitioner, a former employee of the Cafe. The officers contacted petitioner, who agreed to give a statement about his possible involvement in the theft. Petitioner denied being involved in the theft and stated that he had been consuming alcohol the previous evening from 5:00 p.m., until approximately 3:40 a.m., when he left the Cafe.

In February of 2014, petitioner was indicted by the Berkeley County Grand Jury on one count of breaking and entering and one count of grand larceny. While he initially denied that he was the man in the surveillance video, petitioner later admitted that he was the individual seen in the video and admitted to taking the safe in question. However, petitioner denied that he entered the Cafe with the intent to commit a felony or larceny therein and, thus, was not guilty of breaking and entering.

It is undisputed that petitioner arrived at the Cafe on the evening in question at approximately 11:30 p.m., to meet a friend (Ian Kirk) and play video lottery machines. Mr. Kirk left the Cafe at approximately 12:30 p.m., but petitioner stayed. Around 3:30 a.m., the Cafe's video lottery machines were shut down. At that time, petitioner retrieved his ticket from the machine and left it with the bartender. Surveillance video then shows petitioner leaving the Cafe at 3:44 a.m., but returning two minutes later.[4]

Petitioner contends that he reentered the Cafe simply because he observed a police cruiser parked at a nearby convenience store. He testified that it was his intent to either wait for the police cruiser to leave or to find another way home so that he could not be charged with driving his vehicle under the influence ("DUI"). Upon returning to the Cafe, petitioner alleges that he became sick to his stomach. The surveillance video shows that upon reentering the Cafe, petitioner walked to the vicinity of the women's restroom. Petitioner does not dispute that he entered the women's restroom, but stated that he did so because that bathroom was much cleaner than the men's restroom. Petitioner contends that once he entered the women's restroom, he

---

[3]At trial, the manager of the Cafe testified that she knew the smaller safe contained $1,000 on the night of the robbery because she placed that amount of money in the safe the day before.

[4]It is unclear from the record whether the surveillance video showed petitioner in possession of a tire iron when he returned to the Cafe. The State argues that petitioner retrieved the tire iron from his vehicle upon exiting the bar and quickly reentered the Cafe with the tire iron. Petitioner denies that he retrieved a tire iron from his vehicle, and he contends that at the time of the robbery he drove a vehicle which had a "Z" shaped tire iron, unlike the tire iron retrieved from the scene that was straight with a pointed tip. Petitioner contends that he found the tire iron at issue in the closet of the women's restroom, where he speculates it may have been used to work on the water heater.

2

began vomiting and, ultimately, fell asleep on the restroom floor. Petitioner claims that when he awoke, the Cafe was closed. Petitioner contends that it was not until he awoke, saw the tire iron in the women's restroom closet, and realized he had lost approximately $600 gambling on the video lottery machines that evening that he decided to take the safe.

During pretrial proceedings, the State filed a motion in limine to exclude evidence of petitioner's excessive alcohol consumption during the early morning hours of April 12, 2012. The State argued that petitioner did not proffer an expert witness and, thus, could not present a legal defense of diminished capacity by voluntary intoxication. Petitioner agreed and acknowledged that the presentation of a diminished capacity defense requires the testimony of an expert witness. *See State v. Joseph*, 214 W.Va. 525, 590 S.E.2d 718 (2003). However, petitioner argued that testimony of his excessive alcohol consumption was being proffered not to show his "diminished capacity" but to explain the reason that he reentered the Cafe. While the circuit court did not directly prohibit petitioner from presenting evidence of his alcohol consumption, the court advised petitioner to "walk softly" regarding his excessive alcohol consumption, so as not to inadvertently present a defense of diminished capacity by voluntary intoxication.

During his opening statement, petitioner's counsel referenced petitioner's excessive alcohol consumption.[5] In response, the State objected and, outside of the presence of the jury, the trial court conducted a bench conference to discuss the admissibility of testimony regarding petitioner's excessive alcohol consumption. The trial court acknowledged that petitioner's testimony regarding his excessive alcohol consumption would be "piling on" and appeared to be a "backdoor" way of introducing diminished capacity by voluntary intoxication. However, the trial court did not make a ruling, instead urging the parties to come to an agreement.

The State presented its case-in-chief which included the testimony of the owner, manager, and bartender of the Cafe and a law enforcement officer who completed the criminal investigation. At the conclusion of the State's case-in-chief, when no agreement between the parties had been reached as to the admission of evidence regarding petitioner's alcohol consumption, the trial court ruled upon petitioner's motion to introduce testimony of his excessive alcohol consumption. Specifically, the trial court ruled that petitioner could "testify to his alcohol consumption while at the [Cafe], but could not testify to drinking that may have occurred prior to arriving at the [Cafe]."[6] Further, the court ruled that petitioner's friend, Mr. Kirk, could testify to what he personally saw petitioner drink on the night in question but "could not testify to an estimated amount of alcohol he believed the petitioner consumed while at the [Cafe]." Additionally, the court prevented petitioner's girlfriend from testifying that she smelled alcohol on petitioner's breath the morning after the theft.

---

[5]Petitioner's counsel stated "you're going to hear that [Petitioner] had been drinking all day, . . . ."

[6]The trial court ruled that petitioner could testify that he had three drinks at the Cafe on the evening in question, but could not quantify his testimony by adding the additional statement of "maybe more." Petitioner claims that on the evening prior to the theft, he had various liquor drinks at two other bars before going to the Cafe.

At trial, Mr. Kirk testified that he had four to five beers during the course of the time he was at the Cafe with petitioner on the evening in question, and that during that time, petitioner was drinking mixed drinks. Petitioner then took the stand and testified that he "[w]alked in the door [of the Cafe] and ordered a couple of beverages." The State objected and asked the Court to instruct the jury to disregard petitioner's testimony regarding "a couple of beverages." The trial court agreed and instructed the jury accordingly.

During cross-examination, the State noted that nine hours passed between the time petitioner consumed dinner (oysters), and when he allegedly became sick. To which petitioner responded, "I don't think it was totally the oysters." The State responded "[n]o, of course not." Based upon this exchange, petitioner's counsel moved the court to permit petitioner to testify regarding his alcohol consumption, arguing that the State had "opened the door" for limited additional testimony as to alcohol ingestion. Petitioner's counsel argued that the State left the jury with the impression that petitioner was lying because he did not get sick until nine hours later, when "continued drinking could have caused" him to become ill. The trial court denied petitioner's request. Petitioner then rested his case and moved for judgment of acquittal based upon the State's failure to prove his guilt beyond a reasonable doubt. That motion was denied by the trial court. The jury was instructed, and closing arguments were made.

The jury deliberated and, on May 1, 2015, found petitioner guilty of breaking and entering and petit larceny. Subsequently, petitioner filed a motion for new trial, motion for judgment of acquittal notwithstanding the verdict of the jury, and renewed all objections made at trial. At a July 13, 2015, hearing, the circuit court denied petitioner's motions. On November 30, 2015, petitioner was sentenced to not less than one nor more than ten years in the penitentiary for his conviction for breaking and entering. Petitioner was sentenced to one year in the regional jail for his conviction for petit larceny. Petitioner's sentences were to run concurrently. It is from his conviction and sentencing that petitioner now appeals.

On appeal, petitioner raises four assignment of error. In his first assignment of error, petitioner contends that the circuit court's limitation of his ability to introduce evidence regarding his alcohol consumption on the evening in question deprived him of his ability to present a defense. We have previously held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to a review under an abuse of discretion standard." Syl. Pt. 1, *State v. Varlas*, 237 W.Va. 399, 787 S.E.2d 670 (2016) (citing Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998)). "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955), overruled on other grounds by *State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994).

In this case sub judice, petitioner argues that he was "wrongfully precluded" from presenting testimony and evidence regarding the amount of alcohol he consumed on the night in question. Specifically, petitioner contends that it was critically important to his case to explain to the jury why he was sick, which he contends was caused by alcohol consumption not solely what he had eaten that evening, and that the credibility for such a defense rested on testimony

regarding the amount of alcohol he consumed over the course of the evening. Conversely, the State argues that petitioner was not precluded from asserting such a defense at trial and was permitted to proffer testimony regarding his alcohol consumption on the evening in question. Based upon our review of the record herein, we agree with the State and find that the trial court did not abuse its discretion. The record is replete with examples of petitioner's testimony regarding his consumption of alcohol on the evening in question.[7] Accordingly, we find no merit to petitioner's argument.

Second, petitioner contends that the trial court erred in failing to allow petitioner to elicit evidence of his alcohol consumption on the evening in question after the State "opened the door" on this issue during its cross-examination of petitioner. In *State v. Baker*, 230 W.Va. 407, 738 S.E.2d 909 (2013), we discussed the "opening the door doctrine" and noted that this doctrine "operates to prevent a defendant from successfully excluding from the prosecution's case-in-chief inadmissible evidence and then selectively introducing pieces of this evidence for the defendant's own advantage, without allowing the prosecution to place the evidence in its proper context." *Id.* at 412, 738 S.E.2d 914 (citing *State v. James*, 144 N.J. 538, 677 A.2d 734, 742 (1996)).

Here, petitioner was critical of the State's implication, during cross-examination, that he was lying about becoming sick nine hours after consuming oysters, thus attacking his "character and veracity." Petitioner argues that he was entitled to rebut the State's obvious insinuation of his lack of truthfulness and that evidence of his alcohol consumption earlier in the evening in question, prior to arriving at the Cafe, would have clearly rebutted that inference. The State denies that it opened the door, through its cross-examination, as to petitioner's ongoing alcohol consumption. The State notes, and we agree, that its cross-examination of petitioner conformed to the trial court's evidentiary ruling and was within the scope of petitioner's direct examination.[8] Accordingly, we find no error.

In his third assignment of error, petitioner argues that the trial court erred in prohibiting him from arguing "reasonable inferences from the evidence adduced at trial" during closing arguments. In *State v. Guthrie*, 194 W.Va. 657, 678-79 n. 27, 461 S.E.2d 163, 184-85 n. 27 (1995), this Court recognized that "[a] proper closing argument in a criminal case involves the summation of evidence, any reasonable inferences from the evidence, response to the opposing party's argument, and pleas for law enforcement generally." *See State ex rel. Games-Neely v. Yoder*, 237 W.Va. 301, 787 S.E.2d 572 (2016).

---

[7]At trial, petitioner testified to having "at least" three "mixed drinks," and feeling nauseous from eating oysters and "everything else mixed into my stomach," on the night in question after which he urinated in a trash can, vomited, and passed out on the floor of the women's restroom of the Cafe. Further, petitioner testified that he reentered the Cafe at 3:46 a.m. on the evening in question to avoid a possible DUI charge.

[8]We note that while under direct examination, petitioner testified regarding his consumption of oysters nine hours prior to entering the women's restroom at the Cafe.

Here, petitioner argues that because he was not permitted to offer testimony to explain to the jury why he was actually sick (alcohol consumption), he had no way of lending "credence" to his explanation as to why he fell asleep in the women's restroom. In rebuttal, the State argues that the trial court did not limit petitioner from arguing all permissible inferences and facts in evidence during his closing argument. Based upon our review of the record herein, we agree with the State. During his closing argument, petitioner's counsel made multiple references and inferences to petitioner's alcohol consumption on the evening in question in support of petitioner's case. Accordingly, we find no error.

In his fourth assignment of error, petitioner contends that the trial court erred in failing to direct a verdict of acquittal in his favor at the close of evidence, or in the alternative, failing to find that the jury's verdict was contrary to the evidence presented. When discussing a motion for acquittal, we have previously held that

> [t]he trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996). In addressing petitioner's claims that the evidence presented at trial was insufficient to support a conviction. We have held that

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pt. 3, *Guthrie*.

Petitioner contends that no rational juror could have concluded beyond a reasonable doubt that he entered the Cafe on the evening in question with any intent other than to play video lottery games and consume alcohol. Petitioner further argues that he presented "ample evidence" as to his motive for reentering the bar at 3:46 a.m., and that no rational trier of fact could have found the specific intent to commit a larceny established beyond a reasonable doubt. Conversely, the State argues, and we agree, that there was sufficient evidence presented at trial to support the jury verdict.

Here, the jury heard evidence that petitioner was a former employee of the Cafe and had knowledge of the layout of the establishment, including the location of the safes. The State presented video evidence of petitioner leaving the Cafe on the evening in question and re-entering minutes later. Further, the jury heard the testimony of three representatives of the Cafe that the establishment did not keep or use a tire iron on the premises. Likewise, the jury heard the testimony of the bartender on duty at the Cafe on the night in question who testified that she entered the women's restroom on more than one occasion after 4:00 a.m., and did not observe petitioner in the restroom.[9]

For the foregoing reasons, we affirm petitioner's May 1, 2015, conviction on charges of breaking and entering and petit larceny.

Affirmed.

**ISSUED:** January 6, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[9]The restroom did not contain any stalls.